KING, Judge.
Nola Touchette (hereinafter referred to. as plaintiff) filed this suit seeking payment of worker’s compensation benefits, medical expenses, other related incidental expenses, legal interest, and penalties and attorney’s fees.
In her petition, filed on August 29, 1984, plaintiff sued Michael Daigle, M.D. (hereinafter referred to as defendant) and State Farm Insurance Company (hereinafter referred to as State Farm), his worker’s compensation insurer. She alleged that on October 3, 1983, while in the course and scope of her employment for defendant, she received injuries to her right knee and back after falling from the steps of defendant’s house trailer and, as a result thereof, she claimed that she was totally and permanently disabled from returning to any type of gainful employment.
Plaintiff further claimed that she had received no worker’s compensation benefits since the date of the alleged accident and that the failure to pay benefits constitutes arbitrary and capricious action on the part of defendant and State Farm, which subjects them to penalties and attorney's fees as provided by the worker’s compensation law.
Defendant and State Farm filed an Answer to plaintiff’s petition contending that plaintiff did not sustain a compensable injury as a result of the alleged work-related accident occurring on October 3, 1983 and, in the alternative, that plaintiff was employed as a domestic worker at the time of her alleged accident, and was therefore specifically excluded from coverage of the Louisiana Worker’s Compensation Law under the provisions of LSA-R.S. 23:1035(B).[1]
Defendant and State Farm further denied that their action in disputing plaintiff’s claim was without probable cause or was arbitrary or capricious.
Plaintiff then filed a First Amending and Supplemental Petition alleging that she was employed by defendant as a clerical employee at the time of her alleged accident on October 3, 1983. Defendant and State Farm denied the allegations of plaintiff’s First Amending and Supplemental Petition.
Trial on the merits was held on January 11, 1985 and oral reasons were rendered after the close of trial with the trial court finding that plaintiff was in fact an office employee of defendant at the time of her alleged accident. The trial court ordered the parties to submit post-trial briefs on the issue of whether plaintiff had sustained a compensable injury as a result of her alleged work-related accident. On February 15, 1985, the trial court rendered written reasons for judgment noting that plaintiff failed to file a post-trial memorandum and, therefore, this failure constituted an acknowledgement by her that she was not entitled to compensation. Plaintiff timely *1182 filed an Application for New Trial. On April 23, 1985, the trial court rendered written reasons stating that, although plaintiff did in fact file a post-trial memorandum, the trial court denied her Application for New Trial since plaintiff failed to prove any disability or medical expenses or loss of income which were attributable to her injury allegedly sustained on October 3, 1983.
Plaintiff now appeals devolutively alleging as assignments of error that the trial court erred in:
(1) Finding that plaintiff was not totally and permanently disabled as a result of her accident of October 3, 1983 and in not determining her rate of compensation;[2]
(2) Finding that plaintiff failed to prove that accident related medical expenses were incurred by her;
(3) Finding that plaintiff failed to prove any loss of income and lost time from work; and
(4) Failing to find that defendant’s failure to pay worker’s compensation benefits was arbitrary and capricious, thus entitling plaintiff to penalties and attorney’s fees.
Defendant and State Farm answered the appeal, requesting that this Court affirm the trial court’s ruling that plaintiff was not involved in an accident which resulted in a compensable injury under the Louisiana Worker’s Compensation Law. In the alternative, in the event that this Court modifies the trial court’s judgment in any manner so as to find them liable to plaintiff, then defendant and State Farm request that we reverse the trial court’s findings of fact that plaintiff was not a domestic employee at the time of her alleged accident and, therefore, find that plaintiff is excluded from recovering worker’s compensation benefits and/or medical expenses. Defendant and State Farm also request that plaintiff be cast for all costs of this appeal. We affirm.
FACTS
The evidence in the record reveals the following facts. Plaintiff was originally employed by defendant in 1981 to work as a sitter/housekeeper at defendant’s home. Plaintiff’s duties as a sitter/housekeeper were to assist in the raising of defendant’s two minor children, as well as to do general housekeeping duties. Although plaintiff owned her own house, she lived at defendant’s residence from Monday morning through Thursday evening. She would normally arrive at defendant’s residence early Monday morning. This routine was carried out by plaintiff up until the day of the accident and, in fact, thereafter until she was terminated from defendant’s employment on November 15, 1985.
In July, 1983, defendant’s wife returned to live in the household. At that time, plaintiff began working at defendant’s office. Plaintiff’s principal duties, as a receptionist at defendant’s office, were to answer the telephone and confirm appointments with patients who were scheduled to see defendant. Plaintiff worked at defendant’s office from 10:00 A.M. to approximately 1:30 to 2:00 P.M., Monday through Friday. Plaintiff also continued to help defendant and his wife care for the needs of their children, even after she began working in defendant’s medical office, as a part of her employment. Prior to beginning work at defendant’s office, plaintiff was paid out of defendant’s personal funds; after starting work at defendant’s office, plaintiff was paid solely from the checking account for defendant’s office.
Plaintiff testified that on Monday, October 3, 1983 she arrived at defendant’s residence early that morning. After helping send the children off to school, plaintiff proceeded to go to her car to retrieve her clothes which she normally brought with her on Monday to wear for the week. Plaintiff testified that when she was traversing the stairs leading from the house *1183 trailer to the yard, she slipped and fell down the stairs hurting her knee and back. Plaintiff also testified that it was her intention to retrieve her clothes which she intended to wear for the week, put them in the house trailer, and then to straighten up the house trailer before going to work at defendant’s office.
Plaintiff did not miss any work at defendant’s office or at his residence as a result of the alleged accident. Plaintiff did miss approximately one week of work due to an episode of high blood pressure which caused plaintiff to black out. Plaintiff did not complain to any of her co-employees or to defendant concerning any pain she may have suffered as a result of the accident on October 3, 1983 or that she could not perform her duties because of the alleged injuries she sustained in that accident. Additionally, although plaintiff alleges that she developed an abnormal gait and/or limp as a result of the accident, none of her co-employees nor defendant noticed any change in plaintiff’s gait. In fact, the evidence shows plaintiff limped on a regular basis prior to the accident in question.
Plaintiff was terminated from her job with defendant on November 15, 1983 for reasons totally unrelated to her alleged accident. The reason plaintiff was terminated was because she had begun to alienate herself from her co-employees and defendant’s patients. After leaving the employment of defendant plaintiff was employed on several different occasions as a sitter with patients in various local hospitals.
Plaintiff did not seek the care of a physician until February 22, 1984, which was after her discharge from employment. At that time plaintiff went to see Dr. Ronald Miller, an orthopedic surgeon in Abbeville, Louisiana. She remained under his care from February 22, 1984 until June 6, 1984. At the time of Dr. Miller’s deposition, taken on December 13, 1984, Dr. Miller was of the opinion that plaintiff’s right knee had recovered sufficiently to permit her to work. Dr. Miller did not think that plaintiff’s back condition was caused by the accident and could not comment upon the present condition of plaintiff’s lower back at the time of his deposition since he had not seen plaintiff since June 6, 1984.
DISABILITY
Plaintiff alleges that the trial court erred in finding that she was not totally and permanently disabled as a result of her accident on October 3, 1983.
The trial court obviously found that plaintiff failed to prove that she was disabled since it stated in its written reasons for judgment on her Motion For A New Trial, that “the Court does not find that at the trial of this matter on January 11,1985, plaintiff proved any loss of income or medical expenses attributable to the injury.”
The case turns on the trial court’s findings of fact which are subject to the manifest error standard of appellate review. Stone v. Louisiana Pacific Corp., 484 So.2d 306 (La.App. 3rd Cir.1986); Sharbono v. H & S Const. Co., 478 So.2d 779 (La.App. 3rd Cir.1985). The credibility assigned to testimony by the trial court is to be given great weight upon review. Stone v. Louisiana Pacific Corp., supra; Sharbono v. H & S Const. Co., supra.
LSA-R.S. 23:1221 now provides that a claimant must prove “by clear and convincing evidence, unaided by any presumption of disability” that he is totally and permanently disabled. The standard of proof for any lesser degree of disability is “by a preponderance of the evidence.” This alleged accident occurred after the effective date of this statute and it is applicable to plaintiff’s claim.
After carefully reviewing the record, we are of the opinion that the evidence supports the trial court’s finding that plaintiff was not disabled in any manner as a result of the alleged October 3, 1983 accident. Plaintiff’s co-workers and the defendant testified that plaintiff did not complain of pain caused by the alleged accident, nor that she could not handle her job responsibilities at defendant’s office because of pain. They also testified that plaintiff had a noticeable limp prior to the accident and that this limp did not increase *1184 appreciably after the accident. Plaintiff also did not seek medical attention or treatment after the alleged accident.
Plaintiff did not seek medical treatment for her alleged injury until February, 1984, five months after the accident and at least two months after she was terminated from employment by defendant for unrelated reasons. The testimony of Dr. Miller, via deposition, revealed mostly subjective indi-cia of injury, i.e., plaintiff’s own complaints of pain. Radiographs showed a possible knee injury that had already healed, and a spur located at the L5-S1 level of plaintiff’s spine which indicated that plaintiff suffered from a degenerative arthritic condition which pre-existed the date of the accident. The doctor stated that plaintiff’s arthritic condition could have been aggravated by her fall on October 3, 1983. The doctor felt that surgery would be necessary for plaintiff’s degenerative arthritic back condition and that until after surgery, plaintiff was totally disabled. However, there were no sophisticated diagnostic tests performed, and the doctor relied mainly upon the subjective complaints of plaintiff in reaching his medical opinion. There was no objective indication that plaintiff suffered from a ruptured disc. We also note that the doctor had last seen plaintiff six months prior to the taking of his deposition.
The evidence also reveals that plaintiff, in the interval between October 3,1983 and February 1984, suffered from an episode in which her blood pressure rose extremely high causing her to black out. Plaintiff remembers nothing that happened during that time. It is possible that plaintiff may have suffered some type of accident during this episode which may have resulted in plaintiff’s disability, if she was in fact disabled.
The record also reflects that plaintiff, after she was discharged by defendant, worked at a local hospital as a sitter for patients. The evidence also reflects that she did not quit that type of work because she was unable to perform it due to pain, but rather because the patients she sat for eventually died or were released. Additionally, the record is devoid of evidence of any attempt on plaintiff’s part to seek employment after her last employment as a sitter with patients in the hospital.
For these reasons we find that the evidence supports the trial court’s conclusion that plaintiff did not meet her requisite burden of proving that she was disabled as a result of the accident. We do not find that the trial court was manifestly in error or clearly wrong in finding that plaintiff failed to meet her burden of proof of disability as a result of the accident.
MEDICAL EXPENSES AND LOSS OF INCOME
Plaintiff also alleges that the trial court erred in finding that she failed to prove she incurred medical expenses and in failing to find she lost income and time from work. The trial court, having found that plaintiff failed to prove that she suffered a disability caused by the accident, was obviously also of the opinion that she failed to prove her medical expenses were related to the accident. The record supports the trial court’s conclusions. Dr. Miller testified that any knee injury that plaintiff may have incurred had healed itself prior to his first examination of plaintiff. Since no disability was proven and no causal connection was established between the accident and plaintiff’s alleged knee and back injuries and her claimed disability, the trial court was correct in finding the medical expenses incurred by plaintiff in seeking treatment by Dr. Miller were unrelated to the accident.
The evidence also reflects that plaintiff lost no worktime nor income as a result of the accident either while she was still in the employ of defendant or after she was terminated for unrelated reasons. Plaintiff herself testified that after she left defendant’s employ she sat with hospital patients and the record reflects that she quit that type of work not because of disability, but because of lack of that type of work. The record also shows that plaintiff made little or no attempt to find other employment after her last job as a sitter.
Therefore, we find no manifest error on the part of the trial court in finding that *1185 plaintiff failed to prove that she incurred medical expenses or that she lost income and time from work as a result of the October 3, 1983 accident.
OTHER ISSUES
Because of our conclusion that the trial court did not err in finding that plaintiff failed to prove a work-related disability, we need not address the issues regarding the rate of compensation and attorney’s fees and penalties.
Additionally, because of our conclusion that the trial court did not err in finding that plaintiff did not prove a work-related disability, we need not address the alternative contention of defendant and State Farm in their answer to this appeal, that if this Court finds that plaintiff did in fact suffer a work-related disability, that the trial court erred in finding that plaintiff was not a household employee and entitled to worker’s compensation benefits.
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are taxed against plaintiff-appellant.
AFFIRMED.

. LSA-R.S. 23:1035(B) provides that:
"There is exempt from coverage under this Chapter all labor, work, or services performed by any employee of a private residential householder in connection with the private residential premises of such householder and which labor, work, or services are not incidental to and do not arise out of any trade, business, or occupation of such householder. With respect to such labor, work, or services and any employee performing the same, a private residential householder shall have no liability under the provisions of this Chapter either as employer or as a principal; however, any person who is engaged in the trade, business, or occupation of furnishing labor, work, or services to private residential premises shall be liable under the provisions of this Chapter to his employees or their dependents for injury or death arising from and incidental to their employment in rendering such labor, work, or services.”

. Plaintiff asks that in the event we find that she was disabled, we also determine her rate of compensation.